UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| BRENDA  SANCHEZ, | ) | Case No.  6:13-bk-14818-KSJ |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | | |
| JUAN GONZALEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Adversary No. 6:14-ap-00025-KSJ |
| | ) | |
| BRENDA SANCHEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, Juan Gonzalez, is an angry former spouse of the Debtor/Defendant, Brenda Sanchez.  He now seeks denial of the Defendant's discharge under 11 U.S.C. §§ 727 (a)(2)(A) and 727(a)(4)(A).[1] Because the Plaintiff failed to prove either of the counts by a preponderance of the evidence, the Court finds no reason to deny the Defendant her discharge.

The primary purpose of bankruptcy law is to provide an honest debtor with a fresh start by relieving the burden of indebtedness.[2]  Objections to discharge should be construed liberally in favor of the debtor and strictly against the objecting party.[3]  However, this general policy

---

[1] All references to the Bankruptcy Code refer to 11 U.S.C. § 101 *et. seq.*
[2] *Perez v. Campbell*, 402 U.S. 637, 91 S. Ct. 1704, 29 L. Ed. 2d 233 (1971).
[3] *In re Trafford*, 377 B.R. 387, 392 (Bankr. M.D. Fla. 2007). *See also In re Coady*, 588 F.3d 1312, 1315 (11th Cir. 2009).

applies only to the honest debtor.[4]  "At the trial on a complaint objecting to a discharge, the

plaintiff has the burden of proving the objection."[5]  The objecting party must prove the objection

by a preponderance of the evidence.[6]  So, here the Plaintiff must prove the Defendant is not

entitled to receive a discharge by a preponderance of the evidence under §§ 727(a)(2)(A) and

727(a)(4)(A) of the Bankruptcy Code.

Plaintiff's first count is based on § 727(a)(2)(A) of the Bankruptcy Code, which provides:

> The court shall grant the debtor a discharge, unless . . . the debtor,
> with intent to hinder, delay, or defraud a creditor or an officer of
> the estate charged with custody of property under this title, has
> transferred, removed, destroyed, mutilated, or concealed, or has
> permitted to be transferred, removed, destroyed, mutilated, or
> concealed . . . property of the debtor, within one year before the
> date of the filing of the petition . . . .[7]

To warrant denial of discharge under § 727(a)(2)(A), a plaintiff must show: "(1) that the act

complained of was done within one year prior to the date the petition was filed, (2) with actual

intent to hinder, delay, or defraud a creditor, (3) that the act was that of the debtor, and (4) that

the act consisted on transferring, removing, destroying, or concealing any of the debtor's

property."[8]

Plaintiff's second count is based on § 727(a)(4)(A) of the Bankruptcy Code, that allows

for denial of a debtor's discharge where the debtor "knowingly and fraudulently, in or in

connection with the case . . . made a false oath or account."[9]  "The entire thrust of an objection to

discharge because of a false oath or account is to prevent knowing fraud or perjury in the

---

[4] *Coady*, 588 F.3d at 1315 (citing *In re Jennings*, 533 F.3d 1333, 1338-39 (11th Cir. 2008)).
[5] Fed. R. Bankr. P. 4005.
[6] *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).
[7] 11 U.S.C. § 727(a)(2)(A).
[8] *In re Jennings*, 533 F.3d 1333, 1339 (11th Cir. 2008).
[9] 11 U.S.C. 727(a)(4)(A).

bankruptcy case. As a result, the objection should not apply to minor errors."[10]   To warrant denial of discharge based on a debtor's false oath or account, the objecting party must prove the false oath or account was (1) fraudulently made and (2) related to material fact.[11]   Fraudulent intent can be inferred from examining the totality of circumstances surrounding the debtor's bankruptcy case.[12]

To succeed in this adversary proceeding, the Plaintiff therefore must prove by a preponderance of the evidence that the Defendant acted knowingly and fraudulently in connection with the disclosures she made on her bankruptcy schedules and statements or other fraudulently transferred or concealed assets within one year before this bankruptcy case was filed.   The standard is high and intensely factual.   The Court ultimately concludes that the Plaintiff has not met his burden of proof.

Plaintiff was married to the Defendant for approximately four years from 2007 through 2011.   The divorce was acrimonious, and the demeanor of both parties at the trial, held on September 3, 2014, indicated substantial and continued hostility between them.   Plaintiff asserts a claim arising from a $12,000 loan to the Defendant.[13]   Plaintiff contends in this adversary proceeding that the Defendant knowingly and fraudulently failed to disclose in her bankruptcy schedules valuable personal property she obtained both before and after their divorce.   I will discuss each item separately.

---

[10] *In re Dupree*, 336 B.R. 490, 494 (Bankr. M.D. Fla. 2005) (citing *In re Wills*, 243 B.R. 58, 63 (9th Cir. BAP 1999)).

[11] *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991); *In re Ingersoll*, 124 B.R. 116, 122 (M.D. Fla. 1991).

[12] *Chalik v. Moorfield (In re Chalik)*, 784 B.R. 616, 618 (11th Cir. 1984); *In re Khanani*, 374 B.R. 878, 888 (Bankr. M.D. Fla. 2005) (citing *Haught v. U.S.*, 242 B.R. 522, 525 (M.D. Fla. 1999)); *Ingersoll*, 124 B.R. at 122.

[13] (Claim No. 1.)  The Chapter 7 Trustee has filed a notice indicating that he will administer no assets in this case and will make no distributions to creditors.  The Trustee supports granting a discharge to the Debtor.

## 2001 Lexus GS 430

Defendant and her former husband, the Plaintiff, at one time jointly owned a 2001 Lexus GS 430.  Plaintiff, at some unspecified time, voluntarily transferred his interest in the car to the Defendant.  She later transferred title to the car to her friend and landlord, Richard Perez.  The transfer undisputedly occurred over two years before the Defendant filed this Chapter 7 case on December 6, 2013.  Defendant contends she transferred the car to catch-up on her unpaid rent.

Plaintiff argues the Defendant retained possession of the car, even though it was titled in Mr. Perez' name, and deliberately waited the two years to file bankruptcy to avoid disclosing the transfer in response to Question 10 on her Statement of Financial Affairs.[14]  To support this argument, the Plaintiff notes that the Defendant continued to pay car insurance on the vehicle until July 2014, and that she occasionally drove the car.

The Court finds that the Defendant transferred the car to Mr. Perez, who, until August 2013, was incarcerated.  She credibly testified that she transferred the car to pay her rent, and, although she maintained insurance on the car until July 2014, Mr. Perez reimbursed her for the insurance cost.[15]  Defendant had two other vehicles, a motorcycle and a 2003 Ford Explorer, and was not dependent on this car for transportation.  Defendant had no obligation to disclose the transfer of the 2001 Lexus to Mr. Perez and did not fraudulently retain equitable ownership of the car simply to keep the Chapter 7 Trustee from getting the vehicle.

## Artwork, Furs, and Jewelry

Before and during his marriage to the Defendant, the Plaintiff bought her many expensive gifts, including furs, artwork, and jewelry.  After they divorced, the Plaintiff kept the marital

---

[14] Plaintiff's Exhibit 12 at 34.
[15] Plaintiff's Exhibit 17 at 32-33.

home.  Defendant was awarded no personal property in their divorce case.  Yet, the Plaintiff maintains that his former wife has kept all of these expensive gifts.

Defendant denies she took anything with her.  Defendant again was credible in her testimony that the Plaintiff kept everything of value from their marriage, including all artwork, jewelry, and furs.  Plaintiff conversely has introduced absolutely *no* credible proof that the Defendant retained possession of any item of valuable personal property from their marriage. No court order awarded her a single asset.  Plaintiff points to a single invoice for various posters valued at $3,536.71, and issued on December 24, 2006, seven years prior to the bankruptcy, to somehow convince the Court that the Defendant still has possession of these posters purchased years earlier.[16]  Plaintiff has filed to prove by a preponderance of the evidence that the Defendant has failed to disclose her ownership or possession of these luxury gifts.

## Personal Injury Settlement and Mattress Purchase

Plaintiff next contends that the Defendant failed to disclose a personal injury settlement and a mattress she bought with the settlement proceeds.  Again, the evidence is sparse but, apparently, the Defendant, on September 15, 2012, received a settlement of $2,206.98 from her car insurance company to compensate her for injuries arising from a hit-and-run accident.[17] Defendant used these monies plus additional personal funds to buy a medically-prescribed, adjustable mattress.  She properly listed this mattress as an asset on her Schedule B, valued it at $100, and claimed it exempt on her Schedule C.[18]  Although the mattress conceivably has a value greater than $100, the Court cannot imagine a much higher value given it was prescribed specifically for the Defendant and was almost two years old when this bankruptcy case was filed. Again, the Plaintiff has proven no fraudulent intent by the Defendant.

---

[16] Plaintiff's Exhibit 5.
[17] Plaintiff's Exhibit 10.
[18] Plaintiff's Exhibit 12 at 9, 13.

**Safety Deposit Box**

In August 2013, a few months before this bankruptcy case was filed, the Defendant rented a safety deposit box at Bank of America. Defendant used this safety deposit box to store a friend's (Mr. Perez') legal documents, such as his birth certificate and his driver's license, a few of her family photos, and her father's death certificate. Plaintiff argues that the Defendant had to disclose the existence of this safety deposit box in her schedules; however, Question 12 to the Statement of Financial Affairs only requires a debtor to disclose a safety deposit box if the box "has or had securities, cash, or other valuables within one year immediately preceding" the bankruptcy filing.[19] No such items were deposited in the box. Defendant had no obligation to list the box. But, even if she should have listed the item on her Schedule B, the Defendant made absolutely no attempt to hide her ownership. She was forthright and honest when she told the Chapter 7 Trustee about this safety deposit box at her meeting of creditors on January 7, 2014.[20]

Plaintiff failed to prove that the Defendant made any material false oaths or accounts with any knowing or fraudulent intent as required by § 727(a)(4)(A) of the Bankruptcy Code or to show any transfer or concealment intending to hinder, delay, or defraud creditors as required by § 727(a)(2)(A). The Debtor is entitled to a discharge. A separate and final judgment in favor of the Debtors/Defendant and against the Plaintiff consistent with these Findings of Fact and Conclusions of Law shall be entered.

DONE AND ORDERED in Orlando, Florida, on December 18, 2014.

_____
KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

---

[19] Plaintiff's Exhibit 12 at 34.
[20] Plaintiff's Exhibit 3 at 12.

James Scott Mills, Attorney for the Defendant, is directed to serve a copy of this Order on interested parties and file a proof of service within 3 days of entry of the Order.